Anita Y. Milanovich (Mt. No. 12176)
General Counsel
OFFICE OF THE GOVERNOR
1301 E. 6th Ave.
Helena, MT 59601
Ph.: 406/444-5554
Email: anita.milanovich@mt.gov
*Counsel for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| **DO NO HARM**,<br><br>           Plaintiff,<br><br>v.<br><br>**GREG GIANFORTE**, in his official capacity as Governor of the State of Montana,<br><br>           Defendant. | Case No. 6:24-cv-00024-BMM-KLD<br><br>**BRIEF SUPPORTING DEFENDANT'S MOTION TO DISMISS** |

## Introduction

Plaintiff Do No Harm challenges appointment statute MCA § 2-15-108, asserting that an anonymous member, a female doctor from Flathead County identified as "Member A," could not be appointed by the Governor to a position on the Board of Medical Examiners on account of mandatory sex and racial diversity that the statute purportedly imposes.

For his part, the Governor opposes the ideological tenets of diversity, equity, and inclusion (DEI), as well as quotas and affirmative action. His sole priority in making appointments is that of highly qualified individuals, without respect to immutable traits, such as race or sex. Because MCA § 2-15-108 is not mandatory (as Plaintiff asserts, (*see* Compl., Doc. 1, ¶ 32)), but is instead aspirational, it has posed no obstacle to the Governor in satisfying that priority. This is specifically evident with his recent appointments of women (not men or racial minorities as Plaintiff again asserts, (*see id.* at ¶¶ 26-27)), to the Board of Medical Examiners. (*See Appointments,* attached as Ex. A[1].)

Plaintiff's Complaint makes clear it misunderstands both the aspirational nature of the statute and the eligibility threshold to which Member A is subject. No case or controversy exists to confer subject matter jurisdiction on this Court. The Governor respectfully requests the matter be dismissed under F.R.C.P. 12(b)(1).

## Background

In 1991, MCA § 2-15-108, in the form of HB 424, was adopted into law. In its introduced form, the bill mandated gender balance and required that 10% of board membership be comprised of racial minorities. (*HB 424: Introduced*,

---

[1] All Exhibits referenced herein are publicly available documents; they are included for the Court's convenience.

attached as Ex. B.) However, legislative debate and discussion resulted in considerable amendments, with the law ultimately reading as it still reads today:

> (1) As vacancies occur and appointments are made, all appointing authorities of all appointive boards, commissions, committees, and councils of state government shall take positive action to attain gender balance and proportional representation of minorities resident in Montana to the greatest extent possible.
> (2) Pursuant to subsection (1), the secretary of state shall publish in the Montana Administrative Register on a monthly basis the recent appointments made by the executive branch and the upcoming vacancies on executive boards and commissions.
> (3) The governor shall report to the legislature, as provided in 5-11-210, on the progress made toward achieving the goals set forth in this section.

Since the statute's adoption, governors (and presumably others appointing bodies) have made appointments and filed the requisite reports pursuant to the statute. (*See, e.g., Sample Reports,* attached as Ex. C.)

These reports evidence two understood characteristics of this statute. First, the statute is not relevant to individual board appointments, but rather the aggregate of all board appointments. (*See id.* (showing cumulative percentages across all boards of male, female and racial minority appointments).)[2] Second, the statute is aspirational, not mandatory. (*See, e.g., id.* (showing female board

---

[2] For this reason, boards can be, and some are currently, comprised of all men or all women, or may lack a racial minority. (*See, e.g., Board of Plumbers,* attached as Ex. D.) Additionally, a vast majority of boards consist of odd-numbered positions, which would inherently impede any balance between the number of men and women comprising any individual board.

appointment percentages ranging from 38 to 42 percent irrespective of the near 1:1 ratio of men to women in Montana[3]).)

In contrast, the Governor is obligated to satisfy mandatory criteria for appointments laid out in MCA § 37-1-123. And for his recent appointments to the Board of Medical Examiners, he was obligated to comply with additional criteria, most notably that, of the 12 members, he must appoint "five doctors of medicine, including one with experience in emergency medicine, none of whom may be from the same county; …" MCA § 2-15-1731. Because one of the two vacancies required a doctor with experience in emergency medicine, he chose Dr. Magill of Whitefish, in Flathead County, along with Dr. Juhl Petersen, of Missoula County. (*Appointments*, attached as Ex. A.)

## Standard of Review

Federal Rule of Civil Procedure 12(b) authorizes a party to defend against a claim for relief in a pleading through motion on the grounds that the Court lacks subject matter jurisdiction. In reviewing a 12(b)(1) motion to dismiss on standing grounds, "the court must accept as true all material allegations in the complaint and must construe the allegations in the nonmovant's favor." *Reed v. Beatty*, 2024 U.S. Dist. LEXIS 54172, *7 (citing *Chandler v. State Farm Mut. Auto. Ins.*, 598

---

[3] *QuickFacts Montana; United States*, United States Census Bureau, https://www.census.gov/quickfacts/fact/table/MT,US/PST045223 (last visited May 2, 2024).

F.3d 1115, 1121 (9th Cir. 2010)). "The court may not speculate as to the allegations' plausibility." *Id.*

## Argument

### I. The Court lacks subject matter jurisdiction because this case does not present a justiciable case or controversy.

Article III of the United States Constitution limits federal court jurisdiction to "cases and controversies." U.S. Const. art. III, sec. 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). This requirement requires that plaintiffs have standing and that claims be "ripe" for adjudication. *Chandler,* 598 F.3d at 1121. Plaintiffs asserting subject matter jurisdiction bear the burden of proving its existence. *Id.* at 1122. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### A. Do No Harm's "Member A" lacks standing.

For an association like Do No Harm to have standing, it must show "(1) 'its members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

To in turn demonstrate a member has standing, that member "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). This Do No Harm cannot satisfy.

First, even assuming MCA § 2-15-108 works the way Do No Harm asserts, Member A's alleged discriminatory harm is at best uncertain. Do No Harm nowhere states that Member A has applied for appointment to the Board of Medical Examiners. While it is true that an actual application is not required in circumstances where doing so would be a "futile gesture," *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977), here, where two positions were open and other mandatory criteria, such as county of residence, inform eligibility, an application is necessary to ascertain the reason for any ineligibility determination to in turn determine the nature of the injury. Indeed, if Member A had applied, it appears she would have been ineligible for consideration to the position not because she was female, but because of the appointment of a medical colleague from the same county to the other position. (*Appointments*, attached as Ex. A.) So without an actual application for the position, Member A's alleged injury appears to be subjective. *See Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) ("Mere allegations of a subjective

chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

Second, whatever injury—subjective or otherwise—that has occurred cannot be "fairly traceable" to the Governor, as he appointed women to the two open positions. Indeed, those appointments call into question the existence of an cognizable injury in the first instance. How can discrimination based on sex be asserted when the appointment sought was given to the very sex alleged to be discriminated against? A decision of this Court on the lawfulness of MCA § 2-15-108 would, on these facts, be nothing more than an impermissible advisory opinion. *Flast v. Cohen*, 392 U.S. 83, 95 (1968).

Last, a favorable ruling from the Court would not address any alleged harm. Declaring the statute unconstitutional would change nothing for the Governor, who views the statute as aspirational and whose sole priority is highly qualified appointees. And an injunction would serve no purpose as he has already appointed women to the positions in question. Presumably, it is not Do No Harm's intent that the Governor must substitute Member A as his appointee over and above another woman he has already appointed.

For these reasons, this Court lacks subject matter jurisdiction under the standing doctrine.

**B.     This case is not ripe.**

Along with standing, ripeness is one of three justiciability requirements. Ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (internal quotation marks omitted) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). An injury must involve "an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

As shown above, this case invites the Court to entangle itself in an abstract—and arguably nonexistent—disagreement. None of the harm alleged is concrete, actual, or even imminent—it appears that Member A, if she had applied, would have been ineligible from consideration on other grounds. Perhaps some future governor will depart from the interpretation adopted and applied by past governors and would find Member A ineligible on a sex-related basis. But until

such time, the Court should reject Plaintiff's invitation to engage in reviewing a hypothetical constitutional question. This matter is not ripe.

**C.     This case is moot.**

The case in controversy jurisdictional requirement also means a case cannot be moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). With the Governor's appointment of two women to the Board of Medical Examiners, nothing remains for this Court to resolve.  This case is moot.

## Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction in this case. The Governor respectfully requests this Court grant his *Motion to Dismiss.*

Dated: May 3, 2024

                                                Respectfully Submitted,

                                                */s/ Anita Y. Milanovich*
                                                Anita Y. Milanovich (Mt. No. 12176)
                                                General Counsel
                                                OFFICE OF THE GOVERNOR
                                                1301 E. 6th Ave.
                                                Helena, MT 59601
                                                Ph.: 406/444-5554
                                                Email: anita.milanovich@mt.gov
                                                *Counsel for Defendant*

## Certificate of Compliance

This brief complies with Local Rule 7.1(d)(2)(A). It contains 2,006 words, as verified by the word count feature of Microsoft Word, the word processor that created it.

*/s/ Anita Y. Milanovich*
Anita Y. Milanovich

-11-

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served on Plaintiff via CM/ECF electronic notice.

>  */s/ Anita Y. Milanovich*
>  Anita Y. Milanovich