Anita Y. Milanovich (Mt. No. 12176)
General Counsel
OFFICE OF THE GOVERNOR
1301 E. 6th Ave.
Helena, MT 59601
Ph.: 406/444-5554
Email: anita.milanovich@mt.gov
*Counsel for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| **DO NO HARM**,<br><br>      Plaintiff,<br><br>v.<br><br>**GREG GIANFORTE**, in his official capacity as Governor of the State of Montana,<br><br>      Defendant. | Case No. 6:24-cv-00024-BMM-KLD<br><br>**BRIEF SUPPORTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## Introduction

Plaintiff Do No Harm challenges appointment statute MCA § 2-15-108, asserting that four anonymous members, two male (identified as Members B and C) and two female (identified as Members A and D), cannot be appointed by the Governor to future vacancies on the Board of Medical Examiners on account of mandatory sex and racial diversity that the statute purportedly imposes.

For his part, the Governor opposes the ideological tenets of diversity, equity, and inclusion (DEI), as well as quotas and affirmative action. His sole priority in making appointments is that of highly qualified individuals, without respect to immutable traits, such as race or sex. Because MCA § 2-15-108 is not mandatory (as Plaintiff asserts, (*see* Compl., Doc. 1, ¶ 32)), but is instead aspirational, it has posed no obstacle to the Governor in satisfying that priority. This is broadly evident in a 2022 report, showing no meaningful real-world correlation in the balance of sexes and races on boards, (*see Sample Reports,* attached as Ex. C), and specifically evident in his recent appointments of women (not men or racial minorities as Plaintiff again asserts, (*see id.* at ¶¶ 26-27)), to the Board of Medical Examiners. (*See Appointments,* attached as Ex. A[1].)

Plaintiff's Complaint makes clear it misunderstands both the aspirational nature of the statute and the eligibility threshold to which Members A, B, C, and D are subject. No case or controversy exists to confer subject matter jurisdiction on this Court. The Governor respectfully requests the matter be dismissed under F.R.C.P. 12(b)(1).

---

[1] All Exhibits referenced herein are publicly available documents; they are included for the Court's convenience.

## Background

In 1991, MCA § 2-15-108, in the form of HB 424, was adopted into law. In its introduced form, the bill mandated gender balance and required that 10% of board membership be comprised of racial minorities. (*HB 424: Introduced*, attached as Ex. B.) However, legislative debate and discussion resulted in considerable amendments, with the law ultimately reading as it still reads today:

> (1) As vacancies occur and appointments are made, all appointing authorities of all appointive boards, commissions, committees, and councils of state government shall take positive action to attain gender balance and proportional representation of minorities resident in Montana to the greatest extent possible.
> (2) Pursuant to subsection (1), the secretary of state shall publish in the Montana Administrative Register on a monthly basis the recent appointments made by the executive branch and the upcoming vacancies on executive boards and commissions.
> (3) The governor shall report to the legislature, as provided in 5-11-210, on the progress made toward achieving the goals set forth in this section.

Since the statute's adoption, governors (and presumably other appointing bodies) have made appointments and filed the requisite reports pursuant to the statute. (*See, e.g., Sample Reports,* attached as Ex. C.)

These reports evidence two understood characteristics of this statute. First, the statute is not relevant to individual board appointments, but rather the aggregate of all board appointments. (*See id.* (showing cumulative percentages

across all boards of male, female and racial minority appointments).)[2] Second, the statute is aspirational, not mandatory. (*See, e.g., id.* (showing female board appointment percentages ranging from 38 to 42 percent irrespective of the near 1:1 ratio of men to women in Montana[3]).)

In contrast, the Governor is obligated to satisfy mandatory criteria for appointments laid out in MCA § 37-1-123. For his recent appointments to the Board of Medical Examiners, he was obligated to comply with additional criteria, most notably that, of the 12 members, he must appoint "five doctors of medicine, including one with experience in emergency medicine, none of whom may be from the same county; …" MCA § 2-15-1731. Because one of the two vacancies required a doctor with experience in emergency medicine, he chose Dr. Magill of Whitefish, in Flathead County, along with Dr. Juhl Petersen, of Missoula County. (*Appointments*, attached as Ex. A.)

---

[2] Boards can be, and some are currently, comprised of all men or all women, or may lack a racial minority. (*See, e.g., Board of Plumbers,* attached as Ex. D.) Additionally, a vast majority of boards consist of odd-numbered positions, which would inherently impede any balance between the number of men and women comprising any individual board. (*See id.*)

[3] *QuickFacts Montana; United States*, United States Census Bureau, https://www.census.gov/quickfacts/fact/table/MT,US/PST045223 (last visited June 7, 2024).

## Standard of Review

Federal Rule of Civil Procedure 12(b) authorizes a party to defend against a claim for relief in a pleading through motion on the grounds that the Court lacks subject matter jurisdiction. In reviewing a 12(b)(1) motion to dismiss on standing grounds, "the court must accept as true all material allegations in the complaint and must construe the allegations in the nonmovant's favor." *Reed v. Beatty*, 2024 U.S. Dist. LEXIS 54172, *7 (citing *Chandler v. St. Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010)). "The court may not speculate as to the allegations' plausibility." *Id.*

## Argument

### I. The Court lacks subject matter jurisdiction because this case does not present a justiciable case or controversy.

Article III of the United States Constitution limits federal court jurisdiction to "cases and controversies." U.S. Const. art. III, sec. 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). This requirement requires that plaintiffs have standing and that claims be "ripe" for adjudication. *Chandler,* 598 F.3d at 1121. Plaintiffs asserting subject matter jurisdiction bear the burden of proving its existence. *Id.* at 1122. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A.     **Do No Harm's Members A, B, C, and D lack standing.**

For an association like Do No Harm to have standing, it must show "(1) 'its members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Hunt v. Wash. St. Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

To in turn demonstrate a member has standing, that member "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). This Do No Harm cannot satisfy.

First, even assuming MCA § 2-15-108 works the way Do No Harm asserts, Members A, B, C, D's alleged discriminatory harm is at best uncertain. Do No Harm nowhere states that the Members have applied for appointment to the Board of Medical Examiners. While it is true that an actual application is not required in circumstances where doing so would be a "futile gesture," *see Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977), Do No Harm establishes no such futility exists here. Instead, it alleges that, on the one hand, the statute would require women to be appointed to the Board in future openings, (*see* Compl.

¶ 32), which, if true, would make applying potentially futile only for male Members B and C. But it also alleges that the statute would require men to be appointed to the Board in future openings (*see* Compl. ¶ 31), which, if true, would make applying potentially futile only for female Members A and D. Yet despite the fact that these two understandings of the statute yield diametrically opposed and mutually exclusive results, all Members assert injury on account of the statute.

Moreover, any alleged futility ignores other, actual mandatory criteria that appear to apply to Members A, B, and D, and which in turn would at least disqualify Member A, who lives in the same county as another appointee. (*Appointments*, attached as Ex. A.) Since vacancies (and appointments) can happen at any time, (Compl. ¶¶ 28-29), it is unclear what circumstances will exist at the time of actual application to warrant its consideration or rejection. Without an actual application for the position, the Members' alleged injury is subjective. *See Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) ("Mere allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). Indeed, with both statutory applications asserted, it is uncertain from the Amended Complaint that the reason that Members are not applying (or will not apply) for open positions is because of, and only because of, the statute's existence. Do the female doctors believe the statute works one way, and the male doctors another? A decision of this Court on

the lawfulness of MCA § 2-15-108 would, on the facts alleged, be nothing more than an impermissible advisory opinion. *Flast v. Cohen*, 392 U.S. 83, 95 (1968).

Second, whatever injury—subjective or otherwise—that has occurred (or may occur) cannot be "fairly traceable" to the Governor, as his appointment record makes clear no quota or mandate exists and consequently, no application would be futile on account of sex or race. The most recent appointment report shows no real-world correlation between board appointments in the aggregate and the balance of men, women, or races in Montana. (*See Sample Reports*, attached as Ex. C); (*see also* Compl. ¶ 32 (stating that the Governor's 2022 report reflects an imbalance in favor of men).) And most recently, the Governor appointed non-minority women to two open positions on the Board of Examiners, notwithstanding its composition at the time of six women (one of whom is a minority) and four men. (*Appointments,* attached as Ex. A; Compl. ¶¶ 26, 31.)

Indeed, it appears that the only real remedy this Court can afford Do No Harm is to enjoin the Governor from appointing anyone at all, as it seems the Governor is "damned if he does, damned if he doesn't." If he were to appoint a woman to the next vacancy, the fallacious inference (based on Do No Harm's assertions) is that the Governor is following an aggregate quota system that requires it. (Compl. ¶ 32.) But if he appoints a man, that must mean that the Governor is following a quota as to the specific board that requires it. (Compl. 31.)

This is a remedy no one presumably wants, as it would inflict real harm on the Members. But simply declaring the statute unconstitutional and enjoining the Governor from complying with it would change nothing for the Governor (other than relieve him of a mandatory report to file), since the statute is aspirational and his sole priority is highly qualified appointees. Presumably, it is not Do No Harm's intent (nor is it in keeping with the Equal Protection Clause) that the Governor must appoint Members A, B, C, and D to the next four appointments that open up for which they qualify. This Court has no remedy to offer Do No Harm.

For these reasons, this Court lacks subject matter jurisdiction under the standing doctrine.

**B.     This case is not ripe.**

Along with standing, ripeness is one of three justiciability requirements. Ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (internal quotation marks omitted) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). An

injury must involve "an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted).

As shown above, this case invites the Court to entangle itself in an abstract disagreement. None of the harm alleged is concrete, actual, or even imminent—no one has a pending application, and it appears that Member A, if she applied, would be ineligible from consideration on other grounds. Member C is not qualified to apply until 2026. (Compl. ¶ 28.) Perhaps some future governor will depart from the interpretation adopted and applied by past governors and would impose a mandatory quota for board appointments. But until such time, the Court should reject Plaintiff's invitation to engage in reviewing a hypothetical constitutional question. This matter is not ripe.

## Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction in this case. The Governor respectfully requests this Court grant his *Motion to Dismiss First Amended Complaint*.

-11-

Dated: June 7, 2024

                                          Respectfully Submitted,

                                          */s/ Anita Y. Milanovich*
                                          Anita Y. Milanovich (Mt. No. 12176)
                                          General Counsel
                                          OFFICE OF THE GOVERNOR
                                          1301 E. 6th Ave.
                                          Helena, MT 59601
                                          Ph.: 406/444-5554
                                          Email: anita.milanovich@mt.gov
                                          *Counsel for Defendant*

## Certificate of Compliance

This brief complies with Local Rule 7.1(d)(2)(A). It contains 2,176 words, as verified by the word count feature of Microsoft Word, the word processor that created it.

*/s/ Anita Y. Milanovich*
Anita Y. Milanovich

-13-

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served on Plaintiff via CM/ECF electronic notice.

*/s/ Anita Y. Milanovich*
Anita Y. Milanovich
