Anita Y. Milanovich (Mt. No. 12176)
General Counsel
OFFICE OF THE GOVERNOR
1301 E. 6th Ave.
Helena, MT 59601
Ph.: 406/444-5554
Email: anita.milanovich@mt.gov
*Counsel for Defendant*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| **DO NO HARM**,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**GREG GIANFORTE**, in his official capacity as Governor of the State of Montana,<br><br>　　　　　Defendant. | Case No. 6:24-cv-00024-BMM-KLD<br><br>**REPLY BRIEF SUPPORTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## Argument

### I. The Court lacks subject matter jurisdiction because this case does not present a justiciable case or controversy.

Plaintiff asserts that while Governor Gianforte's appointment practices pose no risk of sex or racial discrimination against its Members, its claim is a pre-enforcement challenge asserting that MCA § 2-15-108(1) on its face "imposes a

barrier to equal treatment," (Pl.'s Resp. Opp. Dismissal, Doc. 28, at 9), and denies equal footing to its Members, (*id.*).

While imposing barriers and denying equal footing are, in themselves, legally cognizable equal protection concerns, in this specific context, Plaintiff arrives at these conclusions by overstating the statute as a "mandate" that "commands the Governor to appoint Board members who satisfy its gender and racial mandate." (*Id.* at 6.) This is where Plaintiff and the Governor part ways. The only "command" in MCA § 2-15-108(1) is to take "positive action" "to the greatest extent possible"—generalized directives that ultimately require no specific, measurable outcome. It is aspirational. Indeed, there is no enforcement or policing of this statute—no statute that, for example, voids appointments for failing to comply with it, or that even creates a private cause of action for its violation. The statute simply requires a biannual report reflecting the sex and racial membership of the various boards, MCA § 2-15-108(3)—reports that, as a factual matter, demonstrate that neither this nor past administrations consider a "command" to exist. (*See Sample Reports*, attached to Doc. 27, as Ex. C); *see also* Am. Compl., Doc. 25, at ¶ 34 (stating that the Governor's 2022 report reflects an imbalance in favor of men).)

And so, while it is always possible for a subsequent administration to engage in unlawful discrimination when making appointments (whether by using MCA

§ 2-15-108 as a pretext or otherwise), (Pl.'s Resp. Opposing Dismissal, Doc. 28, at 16 n.6), such is factually and presently not the case here. And that is ultimately the Governor's point: even pre-enforcement facial challenges must comply with Article III's case-in-controversy prerequisites of an appropriate plaintiff (standing) and an appropriate defendant (in this case, ripeness).

In the context of facial First Amendment claims (which are asserted through the Fourteenth Amendment), the courts have articulated this issue as a "threat of enforcement":

> A "recurring issue" for federal courts is determining when the threat of enforcement creates a sufficient injury for a party to have standing to bring a pre-enforcement challenge to a law. *Driehaus*, 573 U.S. at 158. *Driehaus* set the general standard for pre-enforcement standing: a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979)).
>
> We rely on a three-factor inquiry to help determine whether a threat of enforcement is genuine enough to confer an Article III injury. We consider (1) whether the plaintiff has a "concrete plan" to violate the law, (2) whether the enforcement authorities have "communicated a specific warning or threat to initiate proceedings," and (3) whether there is a "history of past prosecution or enforcement." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). "Neither the mere existence of a proscriptive statute nor a generalized threat of prosecution" satisfies this test. *Id.*

*Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022). What Plaintiff simply does not have, at least with this Governor, is a credible threat of enforcement. Governor

Gianforte has factually demonstrated that he does not engage in the appointment practices Plaintiff alleges must occur—even his recent appointments to the very Board to which Plaintiff's Members seek to apply demonstrate this, with the appointment of two non-racial minority women to an already majority female board, despite Plaintiff's claim he must appoint both men and racial minorities. (*Compare Appointments,* attached to Doc. 27, as Ex. A, *with* Am. Compl., Doc. 25, at ¶¶ 31, 33.)

This "lack of threat" carries over into ripeness concerns because it invites this Court to improperly adjudicate an abstract question where no credible unconstitutional harm is imminent. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) ("The basic rationale of the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.") (internal citations omitted). Applications from Do No Harm's Members, which the Governor would welcome, would rule out possible ineligibility based on other statutory criteria (which Member A appears to face due to overlapping county residence) and further demonstrate that concerns of barriers and unequal footing are unfounded with this administration.

Plaintiff argues that applications are not required, as its Members are "able and ready" to apply. (Pl.'s Resp. Opp. Dismissal, Doc. 28, at 8.) The case it cites, *Gratz v. Bollinger,* 539 U.S. 244 (2003), has been since discussed in *Carney v.*

*Adams,* 592 U.S. 53 (2020), which clarifies that plaintiffs may not rely "on a bare statement of intent alone against the context of a record that shows nothing more than an abstract generalized grievance," and that the *Gratz* plaintiff, along with the other plaintiffs in this line of cases, "each introduced at least some evidence that, *e.g.*, they had applied in the past, there were regular opportunities available with relevant frequency, and they were 'able and ready' to apply for them." *Carney*, 592 U.S. at 65-66. No facts here show that prior applications were submitted and denied, or that such an exercise would be a "'futile gesture.'" *Id.* at 66 (quoting *Teamsters v. United States*, 431 U.S. 324 (1977)). Lacking such evidence of a "threat of enforcement," Plaintiff lacks standing and its claim is not ripe.

## Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction in this case. The Governor respectfully requests this Court grant his *Motion to Dismiss First Amended Complaint.*

Dated: July 26, 2024

                                      Respectfully Submitted,

                                      */s/ Anita Y. Milanovich*
                                  Anita Y. Milanovich (Mt. No. 12176)
                                  General Counsel
                                  OFFICE OF THE GOVERNOR
                                  1301 E. 6th Ave.
                                  Helena, MT 59601
                                  Ph.: 406/444-5554
                                  Email: anita.milanovich@mt.gov
                                  *Counsel for Defendant*

## Certificate of Compliance

This brief complies with Local Rule 7.1(d)(2)(B). It contains 1,156 words, as verified by the word count feature of Microsoft Word, the word processor that created it.

>  /s/ Anita Y. Milanovich
>  Anita Y. Milanovich

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing document was served on Plaintiff via CM/ECF electronic notice.

<i>/s/ Anita Y. Milanovich</i><br>
Anita Y. Milanovich