IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DO NO HARM, | |
| Plaintiff, | CV 24-24-H-BMM-KLD |
| vs. | |
| | FINDINGS & |
| | RECOMMENDATION |
| GREGORY GIANFORTE, in his official capacity as Governor of the State of Montana, | |
| Defendant. | |

Plaintiff Do No Harm brings this action challenging the constitutionality of a Montana statute governing gender and racial balance on appointive boards, commissions, committees, and councils of state government. Defendant Governor Gregory Gianforte ("the Governor") has filed a Motion to Dismiss the First Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. 26). For the reasons outlined below, the Governor's motion should be granted.

I.    **Background**

The Montana Legislature enacted House Bill 424 during the 1991 Legislative Session. HB 424 is now codified at Mont. Code Ann. § 2-15-108, which provides:

> **Gender and racial balance—report to legislature.** (1)  As vacancies occur and appointments are made, all appointing authorities of all appointive

boards, commissions, committees, and councils of state government shall take positive action to attain gender balance and proportional representation of minorities resident in Montana to the greatest extent possible.

(2) Pursuant to subsection (1), the secretary of state shall publish in the Montana Administrative Register on a monthly basis the recent appointments made by the executive branch and the upcoming vacancies on executive boards and commissions.

(3) The governor shall report to the legislature, as provided in 5-11-210, on the progress made toward achieving the goals set forth in this section.

Mont. Code Ann. § 2-15-108.

The Montana Department of Labor and Industry's Board of Medical Examiners ("the Board") is one of many state boards that are subject to the gender and racial balance provisions of Mont. Code Ann. § 2-15-108. (Doc. 25 at ¶¶ 1-2). The Board regulates the delivery of healthcare, licenses qualified health professionals, investigates allegations of misconduct, and disciplines health professionals who violate the Board's rules or regulations. (Doc. 25 at ¶ 21). The Board is comprised of 12 members appointed by the Governor, five of whom must be "doctors of medicine, including one with experience in emergency medicine, none of whom may be from the same county." (Doc. 25 at ¶ 22; Mont. Code Ann. §2-15-1731(2)(a)). The remaining seven seats must be filled with one doctor of osteopathy; one podiatrist; one nutritionist; one physician assistant; one emergency care provider; and two public members. (Doc. 25 at ¶ 23; Mont. Code Ann. § 2-15-1731(2)(b)-(g)).

Plaintiff Do No Harm is a national non-profit organization whose "mission is focused on keeping divisive identity politics out of healthcare." (Doc. 25 at ¶7). Do No Harm's membership includes more than 6,000 medical professionals, students and policymakers, some of whom are Montana residents. (Doc. 25 at ¶ 7). Do No Harm's Montana members include four physicians who are not members of a racial minority group: a female licensed physician, M.D., who practices dermatology in Flathead County (Member A); a male licensed physician, M.D., who practices family medicine in Lake County (Member B); a male licensed physician, M.D., who practices specialty surgery in Gallatin County (Member C); and a female licensed physician, D.O., who practices family medicine in Lincoln County (Member D). (Doc. 25 at ¶¶ 8-11).

Two doctor-of-medicine seats on the Board opened in September 2023. (Doc. 25 at ¶ 26). Do No Harm filed its Complaint on March 12, 2024, and the two open Board seats were filled three weeks later. (Doc. 25 at ¶ 26). Due to staggered terms, at least one doctor-of-medicine seat on the Board is set to open in September of every year. (Doc. 25 at ¶ 27). The doctor of osteopathy seat on the Board will open in September 2026. (Doc. 25 at ¶ 28). Openings on the Board can also occur unpredictably in the event of a resignation, removal, or death of a Board member. (Doc. 25 at ¶ 29). Do No Harm filed an Amended Complaint in May 2024, at which time the 12 Board seats were held by eight women and four men.

(Doc. 25 at ¶ 31).

Do No Harm alleges that Members A, B, C, and D (collectively "the Members") are "qualified, ready, willing, and able to be appointed to the Board" for upcoming vacancies, but are disadvantaged by the gender and racial balance provisions of Mont. Code Ann. § 2-15-108. (Doc. 25 at ¶¶ 8-11, 36). Do No Harm alleges that the "gender and racial mandates" of Mont. Code Ann. § 2-15-108 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and seeks a declaratory judgment to that effect. (Doc. 25 at ¶¶ 38-49, p. 14). Do No Harm also requests a permanent injunction prohibiting the Governor from enforcing, or attempting to enforce, the statute's "gender and racial mandates." (Doc. 25 at 14).

The Governor moves to dismiss the First Amended Complaint for lack of subject matter jurisdiction on the ground that there is no justiciable case or controversy because Do No Harm lacks constitutional standing, and its claims are not ripe.[1] (Doc. 26).

## II.    Legal Standard

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. U.S. Const. art. III, § 2; *Allen v. Wright*, 468 U.S.

---

[1] Gianforte filed a similar motion to dismiss Do No Harm's initial Complaint. (Doc. 19). Because Do No Harm has filed an Amended Complaint, Gianforte's first motion to dismiss is moot.

737, 750 (1984). Article III's case or controversy requirement mandates that plaintiffs have standing and that claims be ripe for adjudication. *Chandler v. State Farm Mut. Auto. Ins.,* 598 F.3d 1115, 1121 (9th Cir. 2010).

The irreducible constitutional minimum of standing has three elements: (1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The doctrine of ripeness is related to standing and provides federal courts with a means to "dispose of matters that are premature because the plaintiff's purported injury is too speculative and may never occur." *Chandler*, 598 F.3d at 1122.

Because standing and ripeness both relate to a district court's subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler*, 598 F.3d at 1122. The party asserting federal subject matter jurisdiction bears the burden of establishing its existence. *Chandler*, 598 F.3d at 1122.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would

otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

Here, the Governor's argument that Do No Harm has not alleged sufficient facts to establish standing and ripeness raises a facial challenge to subject matter jurisdiction.[2] When considering a facial challenge, the court applies the same standard that applies to motions to dismiss under Rule 12(b)(6) and takes the allegations in the complaint as true, draws all reasonable inferences in the plaintiff's favor, and determines whether the allegations are sufficient to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The court may also consider documents that are attached to the complaint and materials that are subject to judicial notice. *See DeFiore v. SOC LLC*, 85 F.4th 546, 553 n.2 (9th Cir. 2023) (stating that for purposes of a Rule 12(b)(1) facial challenge, "materials of which a district court may take judicial notice are not considered extrinsic evidence") (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may...consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of

---

[2] The Governor also raises a factual challenge to jurisdiction by arguing and submitting evidence that he does not "does not engage in the appointment practices" Do No Harm alleges, and that his "most recent appointment report shows no real-world correlation between board appointments in the aggregate and the balance of men, women, or races in Montana." (Doc. 27 at 8; Doc. 31 at 4; Docs. 27-1 through 27-4). Because the Governor's facial challenge is well taken for the reasons discussed below, the Court need not, and does not, address the Governor's factual challenge. (Doc. 27 at 8; Doc. 31 at 4)

judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

## III.    Discussion

### A.    Standing

An organization like Do No Harm may have "organization standing" to sue on its own behalf and may also have "associational standing" to sue on behalf of its members. *Free Speech Coalition v. Knudsen*, 2024 WL 4542260, at *9 (D. Mont. Oct. 22, 2024). Do No Harm's Amended Complaint reflects that it is asserting associational standing to challenge Mont. Code Ann. § 2-15-108 on behalf of its members.

An organization has associational standing "to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Free Speech Coalition*, 2024 WL 4542260, at *9 (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977)).

The Governor's motion focuses exclusively on the first element of associational standing, which requires Do No Harm to establish that at least one of its members would have standing in his or her own right. *See United Food &*

*Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555

(1996) ("an organization suing as representative [must] include at least one

member with standing to present, in his or her own right, the claim (or the type of

claim) pleaded by the association"). To meet this burden, Do No Harm must

demonstrate that at least one of its members has "(1) suffered an injury in fact, (2)

that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578

U.S. 330, 338 (2016).

The Governor argues Do No Harm has failed to demonstrate the first

element of standing—an injury in fact. "To establish injury in fact, a plaintiff must

show that he or she suffered 'an invasion of a legally protected interest' that is

'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "[A]

grievance that amounts to nothing more than an abstract and generalized harm to a

citizen's interest in the proper application of the law does not count as an 'injury in

fact.'" *Carney v. Adams*, 592 U.S. 53, 58 (2020).

The Amended Complaint includes several allegations that are relevant to the

injury in fact component of the standing inquiry. As Do No Harm reads it, Mont.

Code Ann. § 2-15-108(1) includes "gender and racial balance mandates" because it

"requires the Governor to consider and make decisions on the basis of gender and

race of potential Board members when making appointments" to the Board. (Doc. 25 at ¶¶ 36, 40). Given the composition of the Board at the time it filed its Amended Complaint in May 2024, Do No Harm alleges "the Governor must appoint men to upcoming openings, including the doctor of medicine opening in September 2024," (Doc. 25 at ¶ 31) and "must appoint one member of a minority to the next open seat." (Doc. 25 at ¶ 33). Do No Harm further alleges that if Mont. Code Ann. § 2-15-108(1) applies in the aggregate to appointments made to all boards—rather than individually to each board—then the Governor must appoint women and members of minority groups to upcoming openings on the Board because the Governor's most recent report to the legislature reflects a sizeable imbalance in favor of men, and lack of proportional representation for multiple minority groups, across all boards. (Doc. 25 at 32, 34). Do No Harm alleges the Members have suffered an injury in fact because they "are qualified, willing, and able to be appointed to the Board for upcoming physician vacancies, but for section 2-15-108's gender and racial balance mandates." (Doc. 25 at ¶ 36).

The Governor disagrees with Do No Harm's reading of Mont. Code Ann. § 2-15-208(1) as including gender and racial mandates for appointments to the Board, and instead characterizes the statute as "aspirational, not mandatory." (Doc. 27 at 4). According to the Governor, his sole priority is appointing "highly qualified individuals, without respect to immutable traits, such as race or sex," and

because § 2-15-208(1) is merely aspirational, it poses no obstacle to the Governor in satisfying that priority. (Doc. 27 at 2). But even assuming the statute works the way Do No Harm asserts, the Governor contends the Members have not demonstrated an injury in fact because they do not claim to have to applied for appointment to the Board, or that doing so would be futile.

As a general rule, a plaintiff "lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1149 (9th Cir. 2006) (citing *Madsen v. Boise State University*, 976 F.2d 1219, 1220-21 (9th Cir. 1992)). But a plaintiff's "failure to apply formally for a benefit or opportunity will not preclude standing if application would be futile." *Ellison v. American Board of Orthopaedic Surgery*, 11 F.4th 200, 205 (3rd Cir. 2021) (citing *Carney*, 592 U.S. at 67 ("[O]ur precedents have also said that a plaintiff need not "translate his or her desire for a job … into a formal application where that application would be merely a 'futile gesture') (cleaned up) (quoting *Teamsters v. United States*, 431 U.S. 324, 365-66 (1977)).

The Governor acknowledges that a formal application is not required to establish standing if the application would be a futile gesture, but contends Do No Harm has not alleged facts demonstrating that it would be futile for the Members to apply for appointment to the Board. Do No Harm does not argue otherwise—it

does not attempt to establish futility in response to the Governor's motion to dismiss, and it has not included allegations of futility in the Amended Complaint. Do No Harm instead asserts that where, as here, an equal protection plaintiff in a discriminatory barrier case seeks prospective relief, the plaintiff does not have to plead or establish futility to excuse a failure to apply and need only demonstrate that he or she is "able and ready" to apply.

The Supreme Court has held that "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," the injury-in-fact "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Assoc. Gen. Contractors of America v. City of Jacksonville,* 508 U.S. 656, 666 (1993) ("*Florida Contractors*"). To demonstrate this type of injury, a plaintiff "need not allege that he would have obtained the benefit but for the barrier," and is not required to "go through the futile motions of applying and inevitably being turned away." *Loffman v. California Department of Education*, 119 F.4th 1147, 1159 (9th Cir. 2024) (quoting *Florida Contractors,* 508 U.S. at 666 and citing *Gratz v. Bollinger*, 539 U.S. 244, 26-61 (2003)).

That said, the requirement that an injury-in-fact "must be 'concrete and particularized,' as well as 'actual or imminent'" still holds. *Loffman*, 119 F.4th at 1159 (quoting *Carney,* 592 U.S. at 58). In discriminatory barrier cases, the

Supreme Court has interpreted this requirement to mean that plaintiffs must

demonstrate they "are 'able and ready' to pursue the opportunity at issue."

*Loffman*, 119 F.4th at 1159) (quoting *Carney,* 592 U.S. at 60). It is the plaintiff's

"ability and readiness" to apply "that ensures an injury in fact is concrete and

particular; the requirement precludes the airing of generalized grievances."

*Loffman*, 119 F.4th at 1159 (quoting *Planned Parenthood of Greater Wash. & N.*

*Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir.

2020). *See also Gratz*, 539 U.S. at 262 (holding that a student challenging a

university's use of race in admissions had standing to seek prospective relief

because he demonstrated that he was "ready and able" to apply should the

university stop using race in admissions).

The Supreme Court's decision in *Carney* illustrates the significance of the

"able and ready" requirement. *See Loffman*, 119 F.4th at 1160. In *Carney*, a

Delaware lawyer who was a registered political independent challenged a state

constitutional provision requiring that judicial appointments to Delaware courts

"reflect a partisan balance." *Carney*, 592 U.S. at 55. The plaintiff claimed that the

requirement "violated his First Amendment right to freedom of association by

making him ineligible to become a judge unless he rejoined a major political

party." *Carney*, 592 U.S. at 56. The Supreme Court held that the plaintiff lacked

standing to challenge the requirement because he had not shown he was "able and

ready" to apply for a judgeship "in the imminent future," as required to establish an injury-in-fact. *Carney*, 592 U.S. at 66. Although the plaintiff stated that he "would apply" for any judicial position for which he felt he was qualified, the Supreme Court noted that those words stood alone "without any actual past injury, without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to demonstrate likely openings, without other preparations or investigations, and without other supporting evidence." *Carney*, 592 U.S. at 63. The Supreme Court concluded that the plaintiff's "few words of general intent" were insufficient to show an injury-in-fact, and that he was seeking to vindicate an "abstract generalized grievance, not an actual desire to become a judge." *Carney*, 592 U.S. at 63-64.

Although *Carney* was decided on summary judgment, the Ninth Circuit and its district courts have applied *Carney*'s reasoning at the motion to dismiss stage. *See e.g. Loffman*, 119 F.4th 1160-61; *Planned Parenthood*, 946 F.3d at 1108-09; *Haltigan v. Drake*, 2024 WL 150729, at *4 (N.D. Cal. Jan. 12, 2024). For purposes of a motion to dismiss for lack of standing, a plaintiff "need only plausibly allege facts sufficient to demonstrate ability and readiness." *Loffman*, 119 F.4d at 1160-61 (citing *Spokeo*, 578 U.S. at 338). "[I]n most cases, a plaintiff will need to plead that he or she took some actual steps that demonstrate a real interest in seeking the alleged benefit." *Ellison*, 11 F.4th at 207.

Before considering whether the Amended Complaint satisfies the "able and ready" standard, the Court pauses briefly to address Do No Harm's argument that plaintiffs in discriminatory barrier cases are not required to also establish that applying for the desired opportunity would be futile. After finding in *Carney* that the plaintiff's "bare statement of intent alone" was insufficient to establish he was "able and ready" to apply for a judgeship, the Supreme Court made clear it was not departing from or modifying precedent holding that a plaintiff need not submit a formal application "where that application would be merely a futile gesture." *Carney*, 592 U.S. at 67 (citation and internal quotation marks omitted). Some post-*Carney* cases have applied the futility and "able and ready" standards together, recognizing that when formally applying would be a futile gesture, "a plaintiff need only demonstrate that they are able and ready to apply, but a discriminatory policy prevents them from doing so on equal footing." *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 113 (2d Cir. 2024) (citing *International Brotherhood of Teamsters*, 431 U.S. at 365-66 and *Gratz*, 539 U.S. at 262). Others have addressed the doctrines separately, as in a recent district court decision out of the Ninth Circuit which expressly accepted the argument Do No Harm makes here—that a plaintiff who demonstrates he is "able and ready" to apply "does not need to plead futility." *Haltigan*, 2024 WL 150729, at 6 n. 3. Because the Court finds for the reasons stated below that the Amended Complaint does not satisfy the "able and ready"

standard, whether Do No Harm would be required to also plead futility is immaterial.

To satisfy the "ability" prong of the "able and ready" standard, Do No Harm must demonstrate that at least one Member would be qualified and eligible for appointment to the Board but for the allegedly discriminatory criteria. *See e.g.*, *Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924 at *10 (N.D. Cal. March 13, 2020) (the "able" portion of the "able and ready" standard means "qualified"). Five of the Board's twelve members must be doctors of medicine, none of whom may be from the same county, and one member of the Board must be a doctor of osteopathy. Mont. Code. Ann. § 2-15-1731(a)-(b). In addition, each doctor serving on the Board must be a Montana resident, at least 18 years old, and currently practicing in the profession with an active Montana license in good standing for at least one year. Mont. Code Ann. § 37-1-123(4).

The next doctor of osteopathy seat on the Board will open in September 2026. (Doc. 25 at ¶ 28). But for the allegedly discriminatory criteria, Member D will be eligible to apply for that position because she is a doctor of osteopathy and satisfies the remaining statutory requirements. (Doc. 25 at ¶ 11). While Member D is thus "able" to apply for the next doctor of osteopathy seat on the Board, whether Members A, B, and C are similarly able to apply for current or future seats on the Board is somewhat more complicated. Two doctor of medicine seats on the Board

15

opened in September 2023. (Doc. 25 at ¶ 26). At that time, the three doctor of

medicine Board members with unexpired terms resided in Gallatin, Hill, and

Yellowstone Counties. (Doc. 25 at ¶ 26 n. 1). Do No Harm filed this action on

March 12, 2024, and approximately three weeks later the Governor appointed

doctors of medicine from Flathead and Missoula Counties to fill the two vacant

seats.[3] (Doc. 25 at ¶ 26). Taking the allegations in the Amended Complaint as true,

one doctor of medicine seat on the Board opened in September 2024,[4] and one

more will open in September 2025.

Consistent with the allegations in the Amended Complaint, publicly

available information on the Governor's website reflects that currently, the four

---

[3] Publicly available information on a Montana state government website shows that effective April 1, 2024, the Governor appointed doctors of medicine from Flathead and Missoula Counties to fill two vacancies on the Board. https://gov.mt.gov/boards_appointments/BoardsView.aspx?Board_ID=219 (last visited on December 30, 2024). *See e.g. Daniels-Hall v. Nat'l Educ.* Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010) (the court may take judicial notice of information made publicly available on government websites where the authenticity of the information is not challenged); *Ahmad v. U.S. Citizenship & Immigration Services*, 2024 WL 3272832, at *2 n. 1 (D. N.J. July 2, 2024) (the court may consider publicly available information on a government website when addressing a facial challenge to subject matter jurisdiction); *Kelly v. Imagineif Library Entity,* 2021 WL 2444663, at *1 (D. Mont. June 15, 2021) (the court may review matters of public record when considering subject matter jurisdiction)

[4] Publicly available information on the same Montana state government website confirms that there is one current opening on the Board for a doctor of medicine. https://gov.mt.gov/boards_appointments/BoardsView.aspx?Board_ID=219 (last visited on December 30, 2024).

doctor-of-medicine Board members with unexpired terms are from Gallatin, Hill, Yellowstone, Flathead, and Missoula Counties. Because Member B practices and resides in Lake County and meets the other statutory criteria, he is eligible and therefore "able" to apply for the current doctor of medicine Board opening. But because Member A is from Flathead County and Member C is from Gallatin County, they are not able to apply for the current doctor-of-medicine opening, and because the future composition of the Board is uncertain whether they may be eligible to apply for any future openings is speculative.[5]

While Do No Harm has adequately alleged that Members B and D are eligible and thus "able" to serve on the Board but for the allegedly discriminatory criteria, thereby meeting the first prong of the "able and ready" standard," it has not satisfied the readiness prong as to any of the Members. To establish readiness, Do No Harm must allege facts demonstrating that the Members have a real interest in, and intend on, applying for a Board seat in the reasonably foreseeable future, such that they are differentiated "from a general population of individuals affected in the abstract" by the challenged statute. *Carney*, 592 U.S. at 64.

---

[5] Do No Harm's allegation that openings on the Board may "occur unpredictably in the even to of a resignation, removal, or death of a Board member" is speculative. (Doc. 25 at ¶ 29). *See Do No Harm v. Lee*, 2024 WL 3730623, at *6 (M.D. Tenn. Aug. 8, 2024), *appeal filed* (6th Cir. Sept 5, 2024) (dismissing claims for lack of standing in analogous case for failure to satisfy the imminence requirement of an injury-in-fact).

On this point, the Amended Complaint alleges only broadly that the Members are "qualified, willing, and able" to be appointed to upcoming vacancies on the Board. (Doc. 25, at ¶¶ 8, 9, 10, 11, 36). Even read liberally, Do No Harm's general allegation that the Members are "willing" to serve on the Board at some unspecified time in the future does not suffice to establish readiness. Do No Harm does not allege that any of the Members have previously applied for a Board position any point during their lengthy careers,[6] or otherwise shown any actual or concrete interest in doing so. Notably, Do No Harm does not even allege that the Members intend on applying, but rather asserts only they would be "willing" to apply at some unspecified time in the future. Do No Harm's bare allegation that the Members would be "willing" to someday apply for appointment to the Board is insufficient to establish readiness because it provides no indication that the Members are likely to apply, have taken any actual steps to apply, or have anything more than a hypothetical interest in doing so. S*ee Haltigan*, 2024 WL 150729 at *3-5 (applying *Carney* at the motion to dismiss stage and concluding the plaintiff's allegation that he "desire[d]" a position at the defendant university was insufficient to demonstrate ability and readiness, particularly where the plaintiff did not allege

---

[6] Member A has practiced medicine for 31 years, Member B has practiced for 17 years, Member C has practiced for 10 years, and Member D has practiced for 17 years. (Doc. 25 at ¶¶ 8-11).

he had applied in the past or undertaken any preparations in anticipation of applying for past or future positions).

Here, as in *Haltigan*, Do No Harm's bare allegation that the Members are "willing" to apply for appointment to the Board is insufficient to establish an injury in fact and shows nothing more than an abstract general grievance about the statutory criteria for Board appointments.[7] Because Do No Harm has not alleged facts demonstrating that at least one Member is both "able and ready" to apply for a Board seat in the reasonably foreseeable future, it has not alleged a concrete and particularized injury-in-fact as required to establish Article III standing.

### B.    Ripeness

The Governor also raises the doctrine of ripeness as a basis for dismissal. (Doc. 27 at 9-10). "Ripeness and standing are closely related because they 'originate from the same Article III limitation.'" *Montana Environmental Information Center v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quoting *Susan B. Anthony List v. Drihaus*, 573 U.S. 149, 157 n. 5 (2014)). "The

---

[7] Do No Harm's allegation that it is bringing "this lawsuit to vindicate its members' constitutional rights, to ensure that every qualified doctor in Montana has the equal right to serve on the Board, and to ensure that Montanans are regulated by a Board that is not selected on the basis of race and gender," further suggests a generalized grievance based on the gender and racial balance provisions of Mont. Code Ann. §2-15-108, not an actual desire on the part of any Member to apply for a Board seat.

'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). "The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing," and therefore "the inquiry is largely the same: whether issues presented are 'definite and concrete, not hypothetical or abstract'." *Association of Irritated Residents v. U.S. Environmental Protection Agency*, 10 F.4th 937, 944 (9th Cir. 2021) (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010)). *See also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("[I]n many cases, ripeness coincides squarely with standing's injury in fact prong.").

Here, the ripeness analysis coincides squarely with the injury-in-fact prong of the constitutional standing analysis. Because Do No Harm has not alleged facts demonstrating that at least one of the Members is both "able and ready" to apply for a seat on the Board, any injuries stemming from the allegedly discriminatory selection criteria are speculative. Speculative injuries "present a dispute that is 'not justiciable, because it is not ripe for review.'" *Coons v. Lew*, 762 F.3d 891, 898 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523, U.S. 726, 732 (1998)). *See also Portman*, 995 F.2d at 920 (speculative injuries are not ripe for review). Because

Do No Harm's allegations of future injury are speculative, they do not satisfy the

constitutional requirement of ripeness and the Amended Complaint is properly

dismissed for lack of jurisdiction.

## III.  Conclusion

For the reasons outlined above,

IT IS RECOMMENDED that Defendant's Rule 12(b)(1) Motion to Dismiss

the First Amended Complaint for lack of subject matter jurisdiction (Doc. 26) be

GRANTED.

IT IS FURTHER RECOMMENDED that Defendant's Motion to Dismiss

the original Complaint (Doc. 19) be DENIED as moot.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of

the Findings and Recommendation of the United States Magistrate Judge upon the

parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.

DATED this 10th day of January, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge