Samantha Romero (Cal. Bar No. 344476*)
Ethan Blevins (Mont. Bar No. 37415893)
Caleb R. Trotter (Cal. Bar No. 305195*)
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
SRomero@pacificlegal.org
EBlevins@pacificlegal.org
CTrotter@pacificlegal.org
Telephone: (916) 419-7111
* *Pro hac vice*

Matthew G. Monforton (Mont. Bar No. 5245)
MONFORTON LAW OFFICES, PLLC
32 Kelly Court
Bozeman, Montana 59718
matthewmonforton@yahoo.com
Telephone: (406) 570-2949

*Attorneys for Plaintiff Do No Harm*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| DO NO HARM,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GREGORY GIANFORTE, in his official capacity as Governor of the State of Montana,<br><br>　　　　　　　　Defendant. | Case No.: 6:24-cv-00024-BMM-KLD<br><br><br>PLAINTIFF'S OBJECTION TO FINDINGS & RECOMMENDATION |

## Introduction

Pursuant to 28 U.S.C. § 636 and Rule 72.3 of the Montana District Court Local Rules, Plaintiff Do No Harm files this objection to the January 10, 2025, findings and recommendation of the United States Magistrate Judge in the above-captioned matter. The findings and recommendation contain at least three errors sufficient to warrant its rejection or modification.

Montana law mandates race- and sex-based discrimination in the appointment of individuals to state boards and commissions. Mont. Code § 2-15-108. The Montana Board of Medical Examiners (the Board) is one such board. Do No Harm, an organization dedicated to eliminating discrimination in healthcare, filed its initial complaint on behalf of its many members—particularly Montana Physician Members A, B, C, and D—on March 12, 2024. Doc. 1. After the Governor filled two open seats to the Board on April 3, 2024, Do No Harm filed its First Amended Complaint on May 24, 2024. Doc. 25. Do No Harm alleges that this race- and sex-based mandate enshrined in Montana law violates the constitutional rights of Do No Harm's Members, who are otherwise qualified, ready, willing, and able to be appointed to the Board. *Id*.

## Legal Standard

"A judge of the court shall make a de novo determination of those portions of the . . . specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). As de novo review is compelled under 28 U.S.C. § 636, "no form of [] deference is acceptable." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991). De novo review fulfills a district court's "statutory and constitutional obligation . . . to arrive at its own independent conclusion about those portions of the magistrate's report to which objections are made." *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## Argument

The findings and recommendation of the Magistrate recommend that Defendant's Motion to Dismiss First Amended Complaint be granted on the grounds that Plaintiff does not have standing and the case is not ripe. Both grounds are based on legal and factual errors. This Court should reject the findings and recommendation and deny Defendant's motion to dismiss.

I.   **Objection to the Recommendation to Grant Defendant's Motion to Dismiss Based on the Conclusion That Plaintiff Lacks Article III Standing**

An organization may meet Article III's standing requirement by "assert[ing] the standing of their members." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). To establish associational standing, the plaintiff-organization must show that (1) one or more of its members "would otherwise have standing to sue in their own right;" (2) the interests of the suit "are germane to the organization's purpose;" and (3) the individual members' participation is not required. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1099 (9th Cir. 2024).

To have standing in their own right, a plaintiff-organization's members must have suffered an "injury-in-fact" that is "concrete and particularized," and "actual or imminent." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). The injury must also be caused by the defendant and redressable by a favorable judicial decision. *See id.* The Magistrate based her findings and recommendations only on the conclusion that Do No Harm's Members failed to demonstrate an injury-in-fact.

4

The establishment of a plaintiff's ability and readiness confirms that their injury is concrete and particularized. *Planned Parenthood*, 946 F.3d at 1108. At the pleading stage, Do No Harm has plausibly alleged facts that suffice to establish its members' readiness and ability to be appointed to the Board. *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1160–61 (9th Cir. 2024).

The Magistrate disagrees. Her findings and recommendation conclude that Do No Harm lacks associational standing because it has not sufficiently pleaded allegations that its members suffer an injury-in-fact from the race- and sex-based mandates of Mont. Code § 2-15-108(1). Doc. 32 at 17–19. According to the Magistrate's findings, Plaintiff fails to plead that its members are "able and ready" to seek out membership on the Board. *Id.* That is false on its face, Doc. 25 ¶¶ 4, 8–11, 36, and to the extent it imposes a novel, heightened pleading standard, it must be rejected. *Cal. Rest. Ass'n*, 89 F.4th at 1100 ("[w]hen 'standing is challenged on the basis of the pleadings,' we must 'accept as true all material allegations of the complaint'"); *see Loffman*, 119 F.4th at 1160–61.

5

### a. Objection to the Legal Finding That Plaintiff Did Not Meet the Standard for General Factual Allegations at the Pleadings Stage

The adequacy of evidence to support standing is dependent on the stage of litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, general factual allegations of injury are sufficient and these allegations are to be presumed to include the underlying facts necessary to support the claim. *Cal. Rest. Ass'n*, 89 F.4th at 1100 (quoting *Lujan*, 504 U.S. at 561). The court is obliged to read the complaint in the plaintiff's favor and cannot adjudicate the plausibility of the factual allegations. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

Do No Harm Members A, B, C, and D have a constitutionally protected right "to be considered for public service *without the burden* of invidiously discriminatory qualifications." *Turner v. Fouche*, 396 U.S. 346, 362 (1970) (emphasis added). The Magistrate's findings are correct that Plaintiff's members are not required to first apply to a facially discriminatory program before they have standing to sue. Doc. 32 at 11 (citing *Loffman*, 119 F.4th at 1159). Instead, Plaintiff need only show that its members are ready, willing, and able to apply for Board membership.

6

*See Gratz v. Bollinger*, 539 U.S. 244, 260–62 (2003) (holding that whether a plaintiff "actually applied" was not relevant to her standing to seek relief). They certainly are not required to place themselves into the precise process they allege is unconstitutional in order to challenge whether that process is unconstitutional. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (individual is not required to "expose himself" to challenge the constitutionality of the law); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (plaintiff not required to avail themselves of the law if there "realistic danger" she will be injured by its natural operation); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (same).

Do No Harm has more than satisfied this pleading requirement. The First Amended Complaint contains concrete factual allegations regarding the ability and readiness of its members. Doc. 25 ¶ 36. Its members also plead that they satisfy all of the non-discriminatory qualifications necessary to sit on the Board. Doc. 25 ¶ 8–11. Do No Harm's members are licensed physicians, residents of Montana, at least 18 years old, and are all currently practicing medicine in good standing with a Montana medical license. Mont. Code § 37-1-123(4)(a). The First

Amended Complaint also identifies with specificity the timelines and frequency which implicate its members' ability and readiness, and resulting injuries. Doc. 25 ¶¶ 26–36. Short of actually applying to the discriminatory process—which everyone agrees they are not required to do—it is hard to imagine what more could be alleged.

Contrary to the Magistrate's findings, Doc. 32 at 12, *Carney v. Adams*, 592 U.S. 53 (2020), does not hold otherwise. In *Carney*, the Supreme Court considered an appeal from summary judgment and held that the "particular record" in this "highly fact-specific case" did not establish that the plaintiff was "able and ready" to become a judge but for the challenged law. 592 U.S. at 63–64. The record revealed that the plaintiff's statement of intent failed to distinguish himself from the general population of individuals "affected in the abstract[.]" *Id.* at 64–66. The Court reserved for another day its decision whether a "statement of intent" in another record or context would be sufficient for standing. *Carney*, 592 U.S. at 64.

The *Carney* Court contrasted its decision from precedent that held a plaintiff need not formally apply to an opportunity or allege that discrimination was the but-for cause of the denial of opportunity. *Id.* at

8

65–66 (referencing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977); *Sporhase v. Neb. ex rel. Douglas*, 458 U.S. 941 (1982); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995); *Gratz v. Bollinger*, 539 U.S. 244 (2003); and *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993)). It explicitly recognized that it did "not here depart from or modify these or any other of the precedents" *Id.* at 66. *Carney* was just a "straightforward application of precedent" which recognized that on summary judgment a plaintiff must prove its injury allegations with concrete evidence. *Id.*

Unlike *Carney*, this case is not at the summary judgment stage. To support its Article III standing, Do No Harm need only plead factual allegations that distinguish its members' injuries from abstract, generalized grievances, 592 U.S. at 63. And this Court must accept them as true. *Cal. Rest. Ass'n*, 89 F.4th at 1100. Do No Harm's pleadings are not required to be proven through a summary judgment record at this stage in the case.

It is correct that the Ninth Circuit has applied *Carney*-like "ready and able" analysis in cases that had only reached the pleading stage. Doc. 32 at 13 (citing *Loffman*, 119 F.4th 1160–61, and *Planned Parenthood*,

9

946 F.3d at 1108–09). But both decisions cited by the Magistrate support invoking this Court's jurisdiction here.

In *Planned Parenthood*, decided eleven months before *Carney*, the Ninth Circuit held that the plaintiff could challenge new federal grant requirements which disfavored Planned Parenthood. 946 F.3d at 1109. The issue concerned whether the plaintiff had adequately pleaded competitive disadvantage injury. *Id*. While the plaintiff had chosen not to compete at all, that did not mean that the allegations were only general. *Id*. at 1108. The court explained that the specificity of the challenged requirements themselves were key to the concreteness of plaintiff's injury. *Id*. The same is true here where the non-discriminatory statutory requirements for membership on the Board are all met by Do No Harm's members. Doc. 25 ¶ 8–11.

*Loffman* also supports standing in this case. There, the Ninth Circuit examined whether school plaintiffs had standing to bring claims under the First Amendment's Free Exercise Clause and the Equal Protection Clause of the Fourteenth Amendment. 119 F.4th at 1159–62. The court rejected the schools' argument that simply identifying a discriminatory barrier was sufficient to demonstrate standing. *Id*. at

10

1159. The schools' contention that they need only identify a discriminatory barrier was more akin to an abstract, generalized grievance. *Id.* at 1159–62.

Importantly, the certification program at issue in *Loffman* statutorily mandated many additional qualifications (other than the challenged barrier), none of which the schools pleaded they could meet. *Id.* at 1161. Thus, the schools' allegations "[o]n information and belief" that they met or were capable of meeting the unchallenged program requirements were not factual allegations "entitled to be assumed true" at the motion to dismiss stage. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). The schools had only alleged that they "[sought] the ability to qualify," and had even failed to make a *Carney*-like bare statement of intent to serve in the desired role. *Id.* (emphasis omitted). Instead of addressing the certification's purpose, the complaint communicated the schools' desire to use "public funding for *religious instruction*" as opposed to an intent to "serve in [the] capacity" of a certified nonpublic school. *Id.* at 1161–62.

The allegations in Do No Harm's First Amended Complaint are easily distinguishable. The allegations as to the ability and readiness of

Members A, B, C, and D are factual, concrete, and largely indisputable. Doc. 25 ¶ 36. Do No Harm pleaded directly to the non-discriminatory statutory qualifications necessary to be considered for the Board. Doc. 25 ¶ 8–11. Its members are licensed physicians, residents of Montana, at least 18 years old, and are all currently practicing medicine in good standing with a Montana medical license. Mont. Code § 37-1-123(4)(a). Additionally, all the members are willing to "serve in [the] capacity" of a Board member. Doc. 25 ¶¶ 8–11. These are not legally conclusory allegations like those of the school plaintiffs in *Loffman*. 119 F.4th at 1161. They are allegations that the members meet every qualification that is not invidiously discriminatory and is necessary to be nominated to the Board—each and every one of them.

And although a summary judgment standard does not apply, by comparison, the pleadings here evince much more ability and readiness than the plaintiff in *Carney*. In *Carney*, the Court did not decide "whether a statement of intent alone under other circumstances could be enough to show standing[,]" but only that the plaintiff's "words alone" were insufficient *within the record*. *Carney*, 592 U.S. at 64. In contrast to the *Carney* plaintiff, Do No Harm pleaded sufficiently regarding anticipated

12

timeframes and the relevant frequency of likely openings. *Compare* Doc. 25 ¶¶ 26–36 *with Carney*, 592 U.S. at 63. And unlike the *Carney* plaintiff, Do No Harm's members have changed nothing about their qualifications to undermine their ability and eligibility to serve on the Board. *See Carney*, 592 U.S. at 62 (noting that the plaintiff had changed his lifetime political affiliation and made himself less eligible for judgeship only nine days before filing his complaint).

Despite recognizing that previous application is not required to establish readiness and ability, the Magistrate's findings ultimately invoke the lack of such an allegation as evidence as the sole identifiable reason that Do No Harm's members are not injured. *Compare* Doc. 32 at 11 with *id.* at 18. Short of actually applying to the Board, which everyone agrees is not required, the Magistrate provides little guidance on what Do No Harm must allege to satisfy its view of Article III. That cannot be the law. *See Gratz*, 539 U.S. at 260–62 (plaintiff need not actually apply to demonstrate readiness and ability). If the Court requires a declaration as to the sincerity of the allegations, Do No Harm will oblige.

But it should not have to. At this stage, Do No Harm must "only plausibly allege facts sufficient to demonstrate [its members'] ability and

13

readiness." *Loffman*, 119 F.4th at 1160–61. Its allegations are entitled to the "presum[ption] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. With a complaint more supportive than *Carney* and plainly distinguishable from *Loffman*, Do No Harm has adequately pleaded that they are ready and able, yet are injured due to their inability to compete on equal footing for positions on the Board. *See Ne. Fla. Chapter*, 508 U.S. at 666.

### b. Objection to the Factual and Legal Findings That Members Are Not Able to Serve

The findings and recommendation make factual and legal errors in determining that Do No Harm Members A and C are ineligible to serve on the Board. Doc. 32 at 17. Each of the members has demonstrated that he or she is "able and ready to pursue the opportunity at issue." *Loffman*, 119 F.4th at 1159 (internal quotations omitted); *see also Gratz*, 539 U.S. at 245 (holding plaintiff demonstrated ability and readiness to apply should the defendant cease to consider race).

Contrary to the findings and recommendation, Member C is eligible for appointment today. Member C is from Gallatin County and is eligible for appointment to the doctor of medicine seat currently held by a

Gallatin County physician, but whose term *expired* in September 2024.[1] Doc. 32 at 16–17.

Member A's eligibility for appointment in 2024 was undercut by the Governor's appointment of a Flathead County resident in April 2024. Doc. 25 ¶ 26. The term of the physician from Flathead County expires in July 2027. Thus, Member A is able to serve when the current Flathead County resident's term expires in less than two-and-a-half years. These terms are "regular opportunities available with relevant frequency." *Carney*, 592 U.S. at 66. And there is ample support for allowing challenges to go forward when complaints are filed years before the effect of the law will be felt. *See New York v. United States*, 505 U.S. 144, 153–54 (1992) (almost six years); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 536 (1925) (three years); *Vill. of Bensenville v. Fed. Aviation Admin.*, 376 F.3d 1114, 1119 (D.C. Cir. 2004) (over thirteen years); *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011) (three and a half years), *abrogated as to other issues by*

---

[1] The Montana state government's website states that the term for the MD from Bozeman, Montana—located in Gallatin County—expired in September 2024.
https://gov.mt.gov/boards_appointments/BoardsView.aspx?Board_ID=219 (last visited on January 20, 2025).

15

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). The timeline of this case does not undermine the "concrete and particularized" elements—and thus the imminence—of Member A's injury. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (standing is not undermined so long as the challenged provision may be invoked against the plaintiff).

## II. Objection to the Recommendation to Grant Defendant's Motion to Dismiss Based on the Conclusion That This Issue Is Not Ripe

Relying entirely on the conclusion that Plaintiff does not sufficiently allege an injury-in-fact, the findings and recommendation likewise conclude that this case is not ripe. Doc. 32 at 20. As discussed above, however, Plaintiff has sufficiently pleaded that its members are "ready and able" to seek membership on the medical board. *See* pgs. 5–16, *supra*. These injuries are "definite and concrete, not hypothetical or abstract." *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021). These are not speculative injuries and thus do not "present a dispute" that is "not ripe for review." *Coons v. Lew*, 762 F.3d 891, 898 (9th Cir. 2014) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732 (1998)).

## Request for Leave to Amend

Finally, if this Court adopts the findings and recommendation and grants the motion to dismiss, this Court should grant Do No Harm leave to amend the complaint to further itemize allegations to support its allegations of its members' ability and readiness. The Ninth Circuit's policy on "freely" granting leave to amend pursuant to Fed. R. Civ. P. 15(a) is to carry it out with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## Conclusion

Based on the foregoing, the Magistrate Judge's January 10, 2025, findings and recommendation should be rejected by this Court and Defendant's Motion to Dismiss First Amended Complaint should be denied. Should this Court adopt the findings and recommendation and grant the motion to dismiss, Plaintiff requests leave to amend the complaint.

DATED: January 24, 2025.  Respectfully submitted,

/s/ *Samantha Romero*
Samantha Romero

17

                Cal. Bar. No. 344476*
                Ethan Blevins
                Mont. Bar No. 37415893
                Caleb R. Trotter
                Cal. Bar No. 305195*
                PACIFIC LEGAL FOUNDATION
                555 Capitol Mall, Suite 1290
                Sacramento, CA 95814
                SRomero@pacificlegal.org
                EBlevins@pacificlegal.org
                CTrotter@pacificlegal.org
                Telephone: (916) 419-7111
                * *Pro hac vice*

                /s/ *Matthew G. Monforton*
                Matthew G. Monforton
                Mont. Bar No. 5245
                MONFORTON LAW OFFICES, PLLC
                32 Kelly Court
                Bozeman, Montana 59718
                matthewmonforton@yahoo.com
                Telephone: (406) 570-2949

                *Attorneys for Plaintiff Do No Harm*

## Certificate of Service

I hereby certify that on January 24, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of such filing to counsel of record who are registered with CM/ECF.

Dated: January 24, 2025.  Respectfully submitted,

/s/ *Samantha Romero*
Samantha Romero
Cal. Bar No. 344476*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
SRomero@pacificlegal.org
Telephone: (916) 419-7111
* *Pro hac vice*

/s/ *Matthew G. Monforton*
Matthew G. Monforton
Mont. Bar No. 5245
MONFORTON LAW OFFICES, PLLC
32 Kelly Court
Bozeman, Montana 59718
matthewmonforton@yahoo.com
Telephone: (406) 570-2949