Samantha Romero (Cal. Bar No. 344476*)
Ethan Blevins (Mont. Bar No. 37415893)
Caleb R. Trotter (Cal. Bar No. 305195*)
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
SRomero@pacificlegal.org
EBlevins@pacificlegal.org
CTrotter@pacificlegal.org
Telephone: (916) 419-7111
* *Pro hac vice*

Matthew G. Monforton (Mont. Bar No. 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, MT 59718
matthewmonforton@yahoo.com
Telephone: (406) 570-2949

*Attorneys for Plaintiff Do No Harm*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| DO NO HARM, | |
| Plaintiff, | Case No.: 6:24-cv-00024-BMM-KLD |
| v. | |
| GREGORY GIANFORTE, in his official capacity as Governor of the State of Montana, | **SECOND AMENDED COMPLAINT** |
| Defendant. | |

## INTRODUCTION

1.    Montana has dozens of state boards and commissions on which Montanans volunteer to serve the citizens of the state. While most eligibility requirements are designed to ensure qualified individuals are appointed to serve, an individual's candidacy also depends on factors outside of his or her control, like race and gender. Indeed, for nearly 34 years, Montana governors have been required to consider an individual's race and gender when making appointments to the state's boards, commissions, committees, and councils.

2.    The Montana Board of Medical Examiners is one such board. It regulates, licenses, and investigates health professionals in Montana to ensure they meet the high standards of the profession. Service on the Board generally requires that an individual be a licensed and practicing health professional in good standing in Montana for at least one year. However, state law also requires the Governor to consider the race and gender of potential members when making appointments to the Board.

3.    Such blatant discrimination against individuals who could sit on the Board serves no legitimate government purpose. It is demeaning, patronizing, un-American, and unconstitutional.

4.    Do No Harm is an organization of over 14,000 medical professionals, students, and policymakers dedicated to eliminating discrimination in healthcare. It has members who are qualified, ready, willing, and able to be appointed to the Board. It brings this lawsuit to vindicate its members' constitutional rights, to ensure that every qualified doctor in Montana has the equal right to serve on the Board, and to ensure that Montanans are regulated by a Board that is not selected on the basis of race and gender.

## JURISDICTION AND VENUE

5.    This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over this federal claim under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201– 2202.

6.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred or will occur in this district.

## PARTIES

7.     Plaintiff Do No Harm is a national nonprofit corporation headquartered in Glen Allen, Virginia. It is a membership organization of over 14,000 medical professionals, students, and policymakers. Its mission is focused on keeping divisive identity politics out of healthcare. Do No Harm's membership includes individuals who are residents of this state, at least 18 years of age, and currently practicing as doctors with active physician licenses in good standing in this state for at least one year.

8.     Specifically, Do No Harm Member "A" is a licensed dermatologist (M.D.) in Montana residing and practicing dermatology in Flathead County. She is a female who is not a member of a racial minority group and is over 18 years of age. Member A has practiced as a dermatologist for 31 years. Member A is qualified, ready, willing, and able to be considered for appointment to the Board of Medical Examiners.

9.     Do No Harm Member "B" is a licensed physician (M.D.) in Montana residing and practicing family medicine in Lake County. He is a male who is not a member of a racial minority group and is over 18 years of age. Member B has practiced as a physician in Montana for 17

years. Member B is qualified, ready, willing, and able to be considered for appointment to the Board of Medical Examiners.

10.    Do No Harm Member "C" is a licensed physician (M.D.) in Montana residing and practicing specialty surgery in Gallatin County. He is a male who is not a member of a racial minority group and is over 18 years of age. Member C has practiced as a physician for 10 years. Member C is qualified, ready, willing, and able to be appointed to the Board of Medical Examiners and has applied for a position on the Board.

11.    Do No Harm Member "D" is a licensed physician (D.O.) in Montana residing and practicing family medicine in Lincoln County. She is a female who is not a member of a racial minority group and is over 18 years of age. Member D has practiced as a physician for 15 years. Member D is qualified, ready, willing, and able to be appointed to the Board of Medical Examiners and has applied for a position on the Board.

12.    Defendant Greg Gianforte is the Governor of the State of Montana. Governor Gianforte is required by Montana law to make all appointments to the Board of Medical Examiners. Mont. Code § 2-15-108(1) requires Governor Gianforte to consider gender and race when

making appointments to the Board. Governor Gianforte is sued in his official capacity.

## FACTUAL ALLEGATIONS

### History of Gender and Racial Mandate on Montana Boards

13.    In 1989, the Montana legislature passed House Joint Resolution No. 28 "urging that all appointive boards, commissions, committees, and councils of the state be gender-balanced."

14.    Of concern to the 51st Legislature was the lack of an accurate "reflect[ion of] the contributions of all Montanans in public policymaking" on the basis of gender. According to the Joint Resolution, less than one-fourth of the various boards in the state were gender-balanced at the time, and the Legislature viewed it "important that all appointive boards … of the state be gender-balanced."

15.    In 1991, the 52nd Legislature considered HB 424, a bill directing that "all appointing authorities," including the governor, "of all appointive boards, commissions, committees, and councils of state government *shall take positive action* to attain gender balance and proportional representation of minorities resident in Montana to the greatest extent possible." (emphasis added).

6

16.    Committee testimony revealed that the chief concern of lawmakers in considering HB 424 was a lack of gender balance on state boards and commissions due to alleged "bias."

17.    HB 424's sponsor, Rep. Stickney, stated in testimony that the bill's intent is "that a board should be complete, and if a qualified minority or gender balancing person cannot be found, they have included the statement 'to the greatest extent possible.'"

18.    Throughout the legislative discussions, the governmental interest asserted was a desire for equal representation for women and racial minorities on boards and commissions.

19.    HB 424 was enacted and is now codified at Mont. Code § 2-15-108.

**The Board of Medical Examiners**

20.    The Board of Medical Examiners was first established in 1889 to regulate the practice of medicine in Montana.

21.    "To protect the health, safety and well being of Montana citizens," the Board regulates the delivery of healthcare, licenses qualified health professionals, investigates allegations of misconduct,

and disciplines health professionals that violate the Board's rules or regulations.

22.    The Board is comprised of 12 members appointed by the Governor. Five of those members must be doctors of medicine, "including one with experience in emergency medicine, none of whom may be from the same county." Mont. Code § 2-15-1731(2)(a). A qualified doctor must also be a Montana resident, at least 18 years old, and currently practicing medicine with an active Montana medical license in good standing for at least one year. Mont. Code § 37-1-123(4)(a).

23.    The remaining seven seats on the Board must be filled with one doctor of osteopathy, one podiatrist, one nutritionist, one physician assistant, one emergency care provider, and two public members. Mont. Code § 2-15-1731(2)(b)–(g).

24.    When making appointments to the Board, the Governor is required to "take positive action to attain gender balance and proportional representation of minorities resident in Montana to the greatest extent possible." Mont. Code § 2-15-108(1).

25.     So long as the mandates for gender balance and racial proportionality remain in place, Do No Harm Members A, B, C and D will not receive equal consideration for openings on the Board.

**Appointments to the Board**

26.     Two doctor of medicine (MD) seats on the Board opened in September 2023. Those seats were filled in April 2024—three weeks after Plaintiff filed its initial complaint in this case.

27.     Another MD seat opened in September 2024. That seat was previously held by a physician from Gallatin County. The seat was filled by a physician from Lewis and Clark County in January 2025.

28.     One MD seat will open in September 2025. The current occupant of that seat is from Yellowstone County.

29.     Another MD seat will open in September 2026. The current occupant of that seat is from Hill County.

30.     The doctor of osteopathy (DO) seat on the Board will also open in September 2026.

31.     Two more MD seats will open in July 2027. The current occupants of these seats are from Missoula and Flathead Counties.

32.    Due to staggered terms, there are regular opportunities available for seats on the Board with at least annual frequency.

33.    Openings can also occur unpredictably in the event of a resignation, removal, or death of a Board member.

34.    The Governor makes appointments to the Board at unpredictable times.

35.    Article VI, Section 4 of the Montana Constitution requires the Governor to faithfully execute all laws. The Governor is therefore required to abide by the race- and gender-based mandates established by Mont. Code § 2-15-108.

36.    The 12 Board seats are currently held by eight women and four men. In order to maintain gender balance on the Board in compliance with Mont. Code § 2-15-108(1), the Governor must appoint men to upcoming openings, including the MD opening in September 2025.

37.    If Mont. Code § 2-15-108(1) applies in aggregate to appointments made to all boards—rather than individually to each board—then the Governor must appoint women to upcoming openings on the Board. The Governor's most recent report made in compliance with

Mont. Code § 2-15-108(3) reflects a sizeable imbalance in favor of men across all boards.

38.    Only one of the 12 seats on the Board is currently held by a member of a minority group. To achieve "proportional representation of minorities resident in Montana," Mont. Code § 2-15-108(1), the Governor must appoint one member of a minority group to the Board. As a result, it would be futile for Members A and B to apply for a seat on the Board as none of them are a member of a minority group.

39.    If Mont. Code § 2-15-108(1) applies in aggregate to appointments made to all boards—rather than individually to each board—then the Governor must appoint members of minority groups to upcoming openings on the Board. The Governor's most recent report made in compliance with Mont. Code § 2-15-108(3) reflects a lack of proportional representation for multiple minority groups—as well as an overrepresentation of non-minority members—across all boards. As a result, it would be futile for Members A and B to apply for a seat on the Board as none of them are a member of a minority group.

40.    Do No Harm has members who are qualified, ready, willing, and able to apply for consideration to be appointed to the Board for

upcoming physician vacancies but for section 2-15-108's race- and gender-based mandates.

## CLAIM FOR RELIEF

41.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

42.   An actual and substantial controversy exists between Plaintiff, its members, and Defendant. Plaintiff's members have the right to seek appointment to the Board of Medical Examiners free from consideration of their gender and race.

43.   The Fourteenth Amendment to the United States Constitution commands that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

44.   Mont. Code § 2-15-108(1) requires the Governor to consider and make decisions on the basis of gender and race of potential Board members when making appointments to the Board of Medical Examiners.

45.    Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

46.    The racial mandate in section 2-15-108(1) does not serve a compelling government interest.

47.    The racial mandate in section 2-15-108(1) does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

48.    Even if the racial mandate in section 2-15-108(1) served a compelling government interest, it is not narrowly tailored to remediating past, intentional discrimination.

49.    Governmental classifications on the basis of gender violate the Equal Protection Clause unless they are substantially related to important governmental objectives.

50.    The gender mandate in section 2-15-108(1) does not serve an important governmental objective.

51.    Gender balance for the sake of gender balance is not an important governmental objective and section 2-15-108(1) does not

remediate any specific instances of gender discrimination that violated the Constitution or statutes.

52.    Even if the gender mandate in section 2-15-108(1) served an important governmental objective, it is not substantially related to remediating past, intentional discrimination.

53.    The mandates in section 2-15-108(1) stereotype individuals on the basis of race and gender, treat all individuals of different races and genders as fungible, mandate racial proportionality, require gender balancing, and have no end date.

54.    Plaintiff has no adequate remedy at law to compensate for the loss of its members' equal protection rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 2-15-108(1)'s gender and racial mandates.

55.    Plaintiff is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 2-15-108(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    A declaration that the gender and racial mandates in Mont. Code § 2-15-108(1) violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

B.    A   permanent   injunction   forbidding   Defendant   and Defendant's agents from enforcing, or attempting to enforce, the gender and racial mandates in Mont. Code § 2-15-108(1);

C.    An award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

D.    Any further relief as the Court may deem just, necessary, or proper.

DATED: March 7, 2025.          Respectfully submitted,

_/s/ Samantha Romero_
Samantha Romero
Cal. Bar. No. 344476*
Ethan Blevins
Mont. Bar No. 37415893
Caleb R. Trotter
Cal. Bar No. 305195*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
SRomero@pacificlegal.org
EBlevins@pacificlegal.org
CTrotter@pacificlegal.org
Telephone: (916) 419-7111
*Pro hac vice*

Matthew G. Monforton
Mont. Bar No. 5245
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, MT 59718
matthewmonforton@yahoo.com
Telephone: (406) 570-2949

*Attorneys for Plaintiff Do No Harm*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of such filing to counsel of record who are registered with CM/ECF.

DATED: March 7, 2025.

/s/ *Samantha Romero*
Samantha Romero
Cal. Bar. No. 344476*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Email: SRomero@pacificlegal.org
*Pro hac vice*